Good morning all. Our first case for argument this morning is Wyatt v. Gates. Mr. Tolchin. Good morning, your honors. May it please the court. I was really torn up about where to begin because there's so many different places to begin and I wish I knew where you wanted me to begin, but not having that luxury. We'll tell you soon enough. I'm sure you will. Thank you. So this court in the previous appeal, and literally this court in the Gates appeal, noted that the victims of terror when they bring lawsuits can find themselves pitted in, I think what the court called, a cruel race against each other to try to attach assets. It would be nice if there was some sort of procedure for equitable division of the money. I wouldn't be adverse to that, but as long as we have this system, which is what Congress made for us, there are rules for the game and the rules are that you have to follow the rules and you can't cut corners, you can't cheat to get there first, you can't do away with procedural protections that Congress ordained in the Foreign Sovereign Immunities Act. So you can't skip service, you can't skip holding, you can't say to the judge, hey Iran didn't appear, Syria didn't appear, so why not just skip this evidentiary hearing? You're going to have to do the hearing, do the service, do the service of the summons and complaint in the cumbersome way that the Foreign Sovereign Immunities Act says, and after you get a judgment, you have to serve the judgment in the admittedly somewhat cumbersome way, but it's a very explicit way, that the statute says you have to do it. If you can't get service by mailing, if you don't get a signed receipt, then you have to go to the next step after 30 days, use diplomatic service. Mr. Tolchin skipping over some of the jurisdictional problems that we'll need to circle back to, but you're talking about the service of the default judgment that's called for under 1608E. Why does that apply to the execution of a judgment based on state sponsorship of terror? I'm not sure I follow the question. Well, we held in the First Gates Appeal that 1610C, which is what says, that's the provision that says you have to do the service of the judgment before you can attach and execute, right? 1610C says you have to get permission from the judge who presided over the case to embark on enforcement of your judgment. And you have to have given the notice required under 1608E. You have to have given the notice and you have to have waited a sufficient time to satisfy the district judge that the defendant isn't going to pay, and that they've gotten the notice. Okay, so we said in Gates 1, that doesn't apply here. You don't need, the issue of getting 1608E has to do with the validity. The only provision for consequences for failing to go forward with 1608E are that you cannot, maybe I'm missing something, but it seems to me that the only consequence is that you can't go forward with attachment or execution under 1610C. Well, you certainly couldn't get permission to enforce your judgment if you hadn't bothered to serve the defendant. With the judgment. With the judgment. That's for sure. That's explicit. But that doesn't apply here. That doesn't apply here, correct. So what are the consequences? You can't, where the defendant is entitled to have notice of the judgment, the purpose, Congress doesn't, in 1608E, Congress didn't say that the reason we are requiring you to serve the defendant with a copy of the judgment and the translation of the judgment to a very specific mechanism, not through their lawyer, but rather through their foreign ministry, through diplomatic channels, is to give the defendant notice of these proceedings. Congress decided, we can't get into violating, violation of sovereign immunity is a very, or overriding sovereign immunity is a very touchy thing. This court alluded to that in Gates 1, or in the Gates decision. But just like you couldn't skip service of the complaint itself, you couldn't skip any step of the proceeding. What's the point, counsel, what's the point of 1608E service for the benefit of Syria, when the day after the service was attempted, Syria filed another appeal? It's a fair question, and I don't know, I don't honestly know what level of communication there was between Syria and Syria's lawyer. Syria's lawyer got this assignment who knows how many years before, who knows who he was dealing with in the Syrian government, who was his interlocutor, who was his go-between, was it some guy at the consulate, was it somebody, a low-level person, was it the foreign minister, did they even still know that he was litigating this case? So could a foreign sovereign waive its rights under 1608E, whatever they might be? I don't think so. I think that's what this court alluded to. Suppose plaintiffs had a letter from the foreign minister of Syria saying we've seen this case, we know about it, we also know about the 1608E business, you don't need to bother. Oh, okay, you mean an active waiver. I don't think by not appearing and not saying anything, we can deem them to have waived, and I think that's what this court said in Rubin. Do you think they can waive? If Syria came into court and said we don't need to be served, we know about this, I still think they can't waive the decisions that I mentioned in the 28J letter we submitted last night. In Rubin versus Iran, the court, the district court had held that because Iran did not appear and raise various objections, immunity objections, under the Foreign Sovereign Immunities Act, the district court said okay, they're waived. This court, on appeal, said no, no, no, the court presiding over a settlement, we can't rely on an implied waiver. Now the difference between that and your question is you're saying it's an active waiver. They're coming in and saying we don't need this. But still the statute doesn't say, the statute says you have to serve this method, this method, this method, or this method. It doesn't say something like in the absence of a waiver you have to serve this way. So under the strict application of the statute, it says what it says. And we tried in our case in Wyatt, we tried to do what they did. We saw what they did. And we said hey, Syria knows about this. They had a lawyer. We don't think we should have to try and serve Syria. We were afraid the letter wouldn't get there and that the diplomatic process is protracted. It would take a long time and cost money. So that's why we asked for permission not to have to do it. And Judge Lamberth in the district court and then the appellate court in the D.C. Circuit said no, the statute says what it says and it's plain as day and you can't skip steps. So 1608E is there. And if we ignore it, if we say they can skip steps, then the statute is just a suggestion. Does the statute provide for any consequences other than under 1610C? No, but neither does it provide for consequences. For example, let's say you didn't serve the summons and complaint in the proper way. Let's say you sent it by, posted it on Syria's Facebook page instead of following the method for service spelled out. The court can't say, well, they obviously know about it because the foreign minister of Syria posted a response on Facebook. We can't infer that they know about it. We could not enter that judgment. If we were trying to enforce the judgment against a bank account and the bank came in, as bank garnishes often come in and say the procedures weren't followed, therefore this money should not be turned over. The oddity here is that it's usually the garnishee or the adverse creditor who comes and points out the violations of the procedure. It's usually not the Syria or the Iran, although sometimes it is. But the courts have very consistently interpreted the Foreign Sovereign Immunities Act as a strict series of procedures that have to be followed at each step of the way. I have seen judgments deemed not enforceable for what you would think are minor deviations. They didn't serve a translation or the Affidavit of Service didn't say that they served a translation. They just said we served the judgment. There's a Notice of Availability of Arbitration. It's an offer of arbitration that has to be served with the complaint. If you didn't serve that, I've seen garnishments not allowed. Here we have a procedure. They consciously did not follow it. They knew the letter came back in the mail. They knew that it had not been delivered. And instead of doing the next step, the statute says, what's the next thing to do? State Department has a procedure. You fill out a form, you pay a fee, and there's diplomatic service available. I've done it. It's doable. It's not an impossibility. Instead of doing that, they waited years. And when they smelled that some money was available, they ran in and asked for the need to serve to be waived. That's cutting corners. And that's not what 1608b... They got permission of sorts. The reason I say of sorts is it wasn't on notice to anyone. It certainly wasn't on notice to me. It was a non-adversarial application granted without any analysis by the court, without any articulation of why she entered that order or how she came to deem it waivable. It was simply a one-sentence order entered, I believe, on the proposed order that they submitted, and I believe it was entered the day after the request was made. It was put as an emergency. But there was no emergency. That certainly isn't... Mr. Tolkien, can I ask you about some of the jurisdictional questions you've got here? Certainly. You brought an independent case against the clerk of the Northern District of Illinois. Correct. Can you still get relief against the clerk of the court? Are you referring to the fact that the clerk doesn't have the money anymore? I am. I don't believe so as a practical matter. I mean, I'll answer that with a caveat, that if we prevail in this appeal, then there needs to be restitution. I know you have that argument, and I'll be asking the Gateses lawyers about those issues. But the case against the clerk does seem moot. If your concern is would we be asking the clerk to pay us again the money that the clerk already paid them, no. Okay. Let me be very specific. Is that case moot? Well, it becomes non-moot if the result of the restitution issue is that the Gateses have to return their money to the clerk. In other words, restitution could work different ways. Okay, so that case cannot independently maintain the viability of these appeals. I think that would be correct to say. Nobody is asking for the clerk to be punished. We all recognize the clerk. You also are arguing that the district judge did not have jurisdiction to order release of the funds on the theory that you had filed your notice of appeal. That's correct. I guess it had seemed to me that the district court's judgment was not stayed, and the court was simply ordering execution of its judgment. Doesn't it have jurisdiction to do that unless there's a stay, or is there an automatic stay in effect? Well, there is an automatic stay, the 10-day, or I guess now it's two-week stay. When we filed a notice of appeal, that divested the court of jurisdiction. That's our argument. The district court no longer has jurisdiction once you file a notice of appeal. I'm not sure at this point. So the filing of the notice of appeal has the effect of a stay? Is that the position? I think in this case that would be true. That seems extraordinary, but okay. It may be an extraordinary, but without much of a practical effect, because here we are. We're on appeal. The money's already been released, and whether the court was procedurally correct to go ahead and issue an order after we had filed a notice of appeal, it's been done. The issue before us, the real issue before us is whether she should have issued that order, and if not, what we can do about it. Okay. You've chosen not to try to intervene under Rule 24, and you're arguing, as I understand it, that your role, your status here is under the Illinois Citation of Assets statute. Correct. As brought into this court under Rule 69, right? Correct. Now, I guess I'd like to go back. We really then have to wrestle with some details of Illinois law. The Gates filed their citation of assets, if I recall correctly, on about December 8th of 2011 or so. Yeah. That perfects the lien and the assets that are covered. If their judgment was valid. At that time, who was entitled to notice? If your question is, were we entitled to notice? I'll get there. And on what basis under Illinois law? I'll tell you that at that point, the question of who is entitled to notice under Illinois law is a much broader question. We did not have a judgment yet. We were just people suing serious, so I would concede that we were not entitled to notice. Whether Illinois law requires the person serving a citation to actually give notice to any class of people, perhaps people who he knows about who have an adverse claim, I don't know. The answer to that question doesn't affect me because my client did not have a judgment even until 2000. We got our judgment in 2012, but it was on appeal, and we didn't have our mandate until March of 2014. So all what they did before that, we didn't, as judgment creditors, we didn't exist to give notice to yet. Exactly. So how can you fault them for not having given you notice? I don't really. Okay. I don't really. But you're relying, if I understand this correctly, on the theory that the Illinois courts would let you in because you didn't get notice. Yes, absolutely. The Illinois courts would actually let us in until our rights would be foreclosed from coming in as adverse claimants, only after judgment has entered in their citation proceeding, after notice to us. So before their judgment. When are they supposed to give you notice of those pending proceedings? Well, it's not that they're supposed to. It's that if they didn't, whatever they litigate, they basically had Gates versus Baker advocating, vying with each other for the money, and they claimed that because the court decided the money goes to Gates, as between Gates and Baker, they're claiming that they won. But that entire proceeding, this entire appeal, was not on notice to us and didn't involve us, and therefore did not adjudge our rights. Now, might they have given us notice? Perhaps. But it's inarguable that they didn't. And under the Illinois statute, we are entitled to come into the proceeding at any time. Obviously, once their proceeding is final and the money has been given away, that might be a practical barrier. But their proceeding was not over when we came into it. It was still ongoing. There was a final judgment affirmed on appeal. No. There was a judgment that said that the money is being deposited into court. Go up on appeal to decide the issue of whether Gates or Baker is entitled to the money, based on the dispute that they had about whether you have to file the request for permission in the local court. Nothing to do with my issue. And that same order that was on appeal said that on remand, the money is to be distributed upon further order of the court. It says that in so many words. So it wasn't just automatic. Can I ask you one other thing, Mr. Tolchin, about you have a claim on Syrian property, right? Correct. So after Judge Kendall ordered the money, basically said this money belongs either to the Gates or to the Bakers, and I think it belongs to the Gateses, and Syria did not appear to contest that, time for it to appeal expired. How is it Syrian property at that point? Until the proceeding is final. No. How is it Syrian property? Let me answer a little bit rhetorically. Whose property? Who else's property is it? Was it the Gateses' property? If it was the Gateses' property, did they pay income tax on the income? Would it have been part of their estate if they declared bankruptcy? Did it have any indicia that it was actually their property? This was property that was paid into court, that was in limbo. But Syria no longer had a claim on it, right? Well, interesting question. What would have happened if this court, for example, had decided it's not Gates's and it's not Baker's? Let's say this court picked up on the, looked at their appeal and picked up on the 1608E and said, hey, neither of you did this notice, neither of you is entitled, both cases are dismissed. So what happens to the money then? It's obviously, to me, it's obvious that this is still property of Syria that different people are vying to enforce against, and they invoked this Illinois statute. They came into court on this Illinois statute, and all we did was come into court ourselves under the same statute and say we are adverse claimants, we are entitled to assert our contrary right, our competing rights, in the same proceeding under the same statute that you invoked. I see the red light is on. I wish I could say more. All right, that will be it for now. Thank you. Mr. Salter? May it please the court, John Salter for the parties we're calling the Gates plaintiffs, and may it please the court, we're up here on the appeal of a disbursement order. There are really two questions that I think the court has focused in on, a lot of the ones that we think are relevant. There are two broad-based inquiries that I think the court should direct its attention to. First, is the dispute about the disbursement by the clerk a live controversy? And we say no. The second question, phrased broadly, would be, are the Wyatts at this time and this place entitled to re-litigate procedural notice rights affecting Syria, all of which would have been handled years ago in the district court for the District of Columbia? And we say the answer to that question is also no, for a lot of different reasons. One thing is not disputed, and Judge Hamilton, I think you pointed it out, amongst many things, but what is undisputed and uncontroverted is that the district court judge in D.C. governing our action, she, that judge, Judge Collier, gave us a 1610C order. She explicitly, in 2011, authorized my clients, the Gates plaintiffs, to begin enforcement proceedings against Syria. At that time, Syria would have been litigating the case for about three years. And you're right, Judge. We got a judgment in, I think, September of 2008. We proceeded to serve pursuant to 1608E. The day after that that was dispatched by the clerk of court, as is required to be, Syria, through counsel, filed a notice of appearance. Notice of appeal, right. Notice of appearance, formal entry of appearance, and yes, a notice of appeal. They did more. For the next three years, they proceeded to file 60B motions that were handled in that Rule 62.1 indicative ruling. They filed the appeal, and that was decided in our favor. There's a so what question here, and the court asked that question of my brother at the bar. 1608E is what I think the court would call a self-executing requirement. If you don't follow it, if you just say, I don't want to do this, which is what the Wyatts said in their case before Judge Lamberth, Judge Lamberth had every right to say, nope, you didn't even try, and I can't relieve you of it. And that's really all the appendix, the unreported opinion in Wyatt says. Our case is different. In this race, to borrow the Wyatts analogy, this was not an unrefereed race. We've had nine judges look at this. That's part of the problem. So we have a lot of judges. There's been a lot of work, and we are one of the few parties who's ever been able to take this kind of a case. We're one of the rays of sunshine in an otherwise dark area of the law. We've actually been able to succeed in taking this case from beginning to end, and we're very proud of that. But I'll point out, this was not an unrefereed race. I think he used the word cheating. We only did what our judge authorized us to do. They say, well, you should have told Syria, you should have served that notice on them. Well, we did. When it got there in Damascus, the agent in the office of the foreign minister in Damascus said, because it got there weeks after Mr. Ramsey Clark, the lawyer for Syria, had started appealing and actively litigating the case. The agent in Syria says, it's no longer necessary. We filed that into the record. It's part of the record in this case. That's a waiver. And I think your point was, can it ever be waived? We say yes, and it was. It was waived again when, after litigating for three years, Judge Collier gave us a 1610C order and authorized us to begin. And Syria, actively in the case for the last three years at that time, didn't take a direct appeal. That's a waiver, too. The Wyatts waived this. One of the things they didn't talk about is they actually moved to intervene shortly after Syria came in, and they didn't raise this argument even though it was in the record. Do you have anything in response to their reply brief? Because they point out that was a much narrower issue. They say that's a generic issue. I'm not sure I really understand that reasoning. If you look at why, first of all, it shows they know how to file a formal intervention issue. We'll get to that. But in terms of whether this was an issue appropriate to raise at that time. It was, because if you look at it, you always look at waiver in the context of what's going on. Their whole theory of intervention in January of 2009, six years ago, was in competition with my clients. They said we need to intervene. They're going to start enforcement proceedings, and we want to compete with them. And if you're going to compete with us in 2009, it would have made sense to raise this issue at that time. If that's right, Mr. Salter, then every one of these cases is going to become a free-for-all with every group of plaintiffs who want to sue the same state, right, intervening in each other's cases. Surely that's not what was the intention. Well, I'm not saying that their intervention was proper and the ramifications of all that. I'm not saying that that's the way to go. Let's not put too much weight on that. Okay, I'll move on. But I'd like to ask you about your mootness point. Yes, sir. You rely on the Porco against Indiana University decision, which is clearly distinguishable because of the role of the 11th Amendment. That's why the court could not order Indiana University to return money to the court. We don't have that here. I'll grant you it's distinguishable in part because the only party who was active in that case, well, it's actually not. The only party in that case was entitled to 11th Amendment immunity. One of the questions you asked was, what about this separate proceeding that the Wyatts started up in August 2014? The only entity who's in that case is a federal officer. We've been cited several cases. The Wyatts go back to the Arkadelphia milling case from the Supreme Court. Judge Rovner on the district court wrote a very thoughtful opinion in General Railway Signal here that addressed this kind of problem and say, in essence, look, if a court is convinced that it has distributed money in error, it has equitable powers to try to bring that money back. Now, why doesn't that apply here? That doesn't apply because look at the classical elements of restitution in a case. The cases, and we distinguish these in our briefs, the cases that the Wyatts have cited for restitution, which is being raised on the first time in this court. In response to your mootness argument. That's exactly right. It's a response to try to get around mootness. The cases the Wyatts are relying on are, first, they're bilateral cases where the underlying judgment goes up involving those two parties. Somebody enforces pending at their own repair, and then we've got to unwind that. Restitution also only works where the Wyatts, because of the judgment, confer a benefit upon us. The Wyatts didn't confer a benefit upon us. We enforced against Syria. Nobody is accusing you of this, but let's suppose the district court became convinced that it had been defrauded into ordering distribution of assets to a group of people. It has no power to do anything about that? Defrauding, it actually would, Your Honor. You'd have Rule 60B, which actually, I think B1, subsection 1, deals with fraud on the court. Why couldn't the same thing be done here? I think that if there were fraud on the court, you could file a Rule 60 motion on that basis. Mistake? I don't think, really, that is not what they've done. 60B also covers mistake. It covers mistake. It recovers a number of things. There's a broad catch-all at the end. The problem is the Wyatts have tried to attack the order that Judge Collier, the 1610C order from several years ago in another court, while also waving, saying, we're not trying to use the rule that governs attacking seeking relief from a final judgment, which is Rule 60. And that's one of the problems. What we're faced with, Your Honor, I'd submit, is the wrong argument being made in the wrong time in the wrong court on the wrong funds. You asked whether or not these are Syrian funds. They're not. When did they stop being Syrian funds? At two different points. If you remember, now, Judge, you had this case. If you remember, there are two turnover orders that went up into appeal at two different times in Gates 1. All three of us had these cases. I've been up here. I'm going to buy property up here. I would if it wasn't so cold. Coming up here twice in a year. Let me point out, read those turnover orders that Judge Kendall entered that were appealed directly in Gates 1. I'm going to quote them for you because Mr. Tolshin denies that they are final turnover orders. This order, both of these orders, fixed the rights of all the parties. First of all, I'm going to reference A147 in the appendix, but it's the record in the underlying action, 08715. This is document 163. This is the first of the two turnover orders. This regarded a Syrian telecommunications agency and instrumentality. Page 11, A147, the 37th paragraph. Based on the service of the D.C. judgment upon the S.A.R., Syrian Arab Republic, through the clerk of court, basically she says the requirements of 1608E for service of the D.C. judgment upon Syrian Arab Republic have been satisfied. I don't understand the Wyatt's argument, given what Judge Kendall found the first round, how the Wyatts could come in and say that the mandate somehow leaves open this argument at this point in time. But let me continue forward to the argument I was trying to make about the extinguishing of any rights of Syria, the country, or the agencies and instrumentality, because it's in both of these orders. I'll quote the A151, the appendix 151. This is subparagraph K. And it clearly extinguishes the rights of the Gates plan and joins my clients, the Bakers, the Syrian Arab Republic, this STE, which is the Syrian Telecommunications Company. Any third-party claimant and all other persons or entities pending or future claims, restrained and enjoined from pursuing these particular funds. Flip to the next page. The third-party citations, these are the mechanisms that my clients use to create a lien. Those citations were terminated pursuant to the Illinois Supreme Court Rule 277 as to the AT&T funds. There is an even broader termination in the second final turnover order because it extinguished our liens entirely. In other words, I don't understand how this doesn't conclude things, how it doesn't vest ownership in my clients at the time. And I don't understand that it seems to me that the great fiction of what the Whites did in August 2014 is to pretend, against all evidence to the contrary, that these were still Syrian funds. They were... Our liens were extinguished. The garter shoes were set loose for the full discharge. The monies were only paid in. Basically, if our liens are extinguished, we had a bailment against the clerk of court. That's really what we had. And that money was held in trust for our clients, and it can't be called Syrian anymore in any reasonable sense of that concept. If it was Syrian, it would have been required by federal law to remain frozen and blocked. But it wasn't. This is... What we're talking about really is... This is... Let me talk to you about the notice of appeal, working a stay. They moved for stays. This judge did nothing wrong. She allowed the stays to get applied for by her, by the Seventh Circuit, by Judge Kagan for the Supreme Court. I didn't know you could do this. The Whites came back to y'all a second time after the Supreme Court filed again for a stay. All the times they were applying for a stay against this disbursement order, they were saying, well, if you don't grant us this relief, we might be mooted out, and that we contend is accurate. And only after all those were exhausted, all the stays denied, did Judge Kendall finally effect the disbursement and effect her order, and she had every right to do so. Let me point out one case to you. It's a bankruptcy case. It's a little bit different, but the reasoning we contend answers some of the questions, Judge Hamilton, that you asked. This is what the court, the Supreme Court, in a bankruptcy context, 1608E, is what you'd call a self-executing requirement. And by the terms of 1610C, it confirmed that right of satisfaction to one entity, which was the court in D.C. And that judge was satisfied and said, go forward. Look at United Student Aid Funds v. Espinoza. We cited this 2010 Supreme Court case extensively. There was no response in the reply. And what that deals with is this semantic distinction that the Wyatts try to say, where it's not void, but it's unenforceable. Yeah, USA Funds, it's helpful to you, but obviously the critical point there was that the creditor had received notice and didn't appeal. Exactly. And that's not true for the Wyatts here. With respect to your proceedings. It's not true for the Wyatts. It is true for the party who mattered regarding this procedural notice requirement, which was Syria. Syria knew. Could I ask you, Mr. Salter, you've made the point vigorously that the Wyatts can't satisfy intervention requirements. They say they don't need to because of the citation of assets proceedings in Rule 69. Given, at least my reading of the Illinois cases, I'm happy to defer to my Illinois colleagues here, but my reading of the Illinois cases suggests that the Illinois courts are pretty solicitous of the rights of parties who did not have notice with this coming in at any time. And I'm also not sure whether that goes to jurisdiction or simply to whether they have a viable claim on the merits. Here's our response. I think they've cited a Macchione case. I might be mispronouncing that. That's a criminal case. The criminal cases are different. But just in an ordinary collection of a civil judgment. Let me point out where I think we disagree with the Wyatts. You can have a lot of different rights, substantive rights, interests in a case. They can come from state or federal law, and we don't deny that. They could have had a substantive interest. I would contend it had to happen before the funds were no longer Syrian, but at some point, let's say they have an interest. The substantive right that motivates, that we're talking about to intervene, doesn't trump the mode, the manner, the timing, which are all procedural, of intervention. And the Ninth Circuit has held that. We don't throw off the bonds of Rule 24 in federal court simply because someone, and we made this point in our brief, and it's a little bit dramatic, but this had the feeling of this to us in August of 2014. It felt like we're sitting in a courtroom in the District Court of the Northern District of Illinois, and the Wyatts just stand up from the gallery and say, that's $82 million. I'd like that. And the District Court judge says, well, we're about to disperse, and we've had an appeal. And they say, well, if you deny it, we're going to appeal. There's a great deal of violence being done to the rule of finality here with the Wyatts arguments. And as I understand the arguments they're making, I don't understand how you have finality in any meaningful sense of the term, given what they think about how Rule 24 doesn't apply, Rule 60B. We're not limited to satisfying those requirements. I just don't know how that survives, practically speaking. In the time that we have left, Mr. Salter, could you tell me why you're assuming that 1610C applies to you in this case? You argued to us a year and a half ago that it didn't. I've read Gates 1. I was there for that. Here's the point I think that it's fair to make in terms of if you want to read every statute as not being surplused. I think the point you've made is correct. 1610C does incorporate 1608E. 1608E doesn't contain an enforcement mechanism. It doesn't have consequences. You asked what consequences. Well, the answer is they're not spelled out. And that's why that Supreme Court case, Espinoza, we thought was relevant. But I think that's the answer. We think 1608E, because this was a default judgment against a foreign sovereign, applied. We think we satisfied it. It sure as heck didn't harm Syria in any way if there was noncompliance here. I think it's a hard case. The case the whites want to make is that after three years of Syria fighting, that we had to tell Syria they had a right to fight. That really doesn't make a whole bunch of common sense, I submit to you. And for the district court, Judge Collier, to say when the decision is committed in the text to her, to say, I find this satisfying. I think that the purposes of this statute have been met. Even if you set by their argument that our compliance was inadequate technically, there's no harm here to the party who was designed to be protected by this statute. Mr. Sheldon, could I ask you about when Judge Kendall actually directed the release of the funds? What date do you think that occurred? Gosh, Judge, in terms of the disbursement order? Well, you know, your opponents argue that she was without jurisdiction. They do, and that does not... I'll let you finish your question, Judge. And their notice of appeal appeared in late October. I don't have the exact date. There was an October 22nd-ish? That order, you referenced both those orders earlier, Mr. Salter. Those orders in the 22nd, Judge Kendall reported to Grant the Gates' motion to release the funds. However, the direction to the clerk really occurs in a separate order on November 6th. That's correct, Your Honor. Which is markedly past the notice of appeal date by your opponent. That's correct. In fairness to my brother at the bar, I don't think, the way I've read the case law on this in this circuit, I don't think that that's material. I think they have a right to... I think they link up on appeal. I don't think they forfeited an appellate right. I do think there's a weirdness in terms of them not filing a notice of appeal by that, but I don't think that's prejudicial to them that they've got a right to file an appeal on that basis. The other ones we have a lot of problems with. But at the end of the day, I'll answer the question this way. Judge Kendall had every right, especially waiting out the stays, not intruding on the prerogative of the appellate court, not interfering with your review. She had every right to order execution or the fulfillment of what she had already ordered, which is a ministerial task at that point. My time's up. Well, we decided that Gates had a priority over the Bakers, right? Yes, Your Honor. We didn't decide whether Gates had a priority over the whites. That's correct. They were not party to that, but I'd point out that there's a difference between how you read presidential decisions, where they say, well, this lurks in the area, it lurks in the thing. I don't think they're giving due credit to the robustness of the mandate rule when it comes back down on remand. Waived issues are not reopened on remand. And the 1608E issue was comprehensively waived by now. I'm out of time. Thank you very much. We'd ask that the court either dismiss these appeals on the grounds we've had argued or affirm the disbursement order. Thank you very much for letting me finish. Thank you, Mr. Salter. Mr. Tolton, your time had expired, but I'll give you an additional two minutes because there was extensive questioning. Let me see what I can do in two minutes. Really, something that irks me is talking about how an agent of Syria waived service. I really think that's a frankly disingenuous statement. On page 250 of the appendix is the purported waiver. It is not a document that comes from an agent of Syria. It's a letter from DHL, the courier company, which says, and hearsay bells are sounding in my mind, that a shipment was attempted to be delivered and was refused. The consignee advised our courier that the shipment was no longer required. Now, we don't know who's the consignee, who's the courier, who wrote this letter, who originally spoke, but to say that this was a statement of the foreign minister of Syria that's in any way binding I think is significantly overstating what it is. I also can't emphasize enough that the order that was appealed, the Gates appeal, it's on page 170 of the appendix, talked about on remand there will be a further order of the court. There was a fight between Gates and Baker. It went up, it was ruled on, it came down, and the court, it was a stipulated order. The order said that the court will consider, by saying upon further order of the court, it's saying that the court will consider any further issues that arise. And the way that Illinois statute works, until it's over, it's not over. We, and the chronology is very important because I think that the district judge, Judge Kendall, was taken aback that we came in at the end. And if I can leave you with one attitudinal thought, it is that we came in at the earliest time that we could. We really did not delay in the slightest. We had, and this is something that unfortunately I don't think I mentioned in my brief, we could not register our D.C. judgment in the Northern District of Illinois until the appeal was exhausted. That's not because of the Foreign Sovereign Immunities Act, it's not because of Section C permission, it's because of the mundane work-a-day rule, 28 U.S.C. Section 1926, you cannot register a judgment for enforcement in another district until the appeal is exhausted. We actually asked Chief Judge Lamberth in D.C. for permission to go and register it, and he said no. And we asked for permission to enforce, he said no, wait for the appeal to be exhausted. So if you go through the chronology of when our appeal was decided, when our mandate issued, and when we came here, we filed our first pleading here within 48 hours after the district court here regained jurisdiction over the case when this court issued its mandate. We really did move with alacrity as soon as we could. Thank you. Thank you, Mr. Fulton. Thank you to all counsel. And the case will be taken under advisement.